## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 23-20115-CR-MORENO/GOODMAN

**UNITED STATES OF AMERICA**

**vs.**

**HENRY LOAIZA-MONTOYA,**
  a/k/a "Luis Felipe Gomez,"
  a/k/a "Junior,"
  a/k/a "El Enano,"

  **Defendant.**

_____/

## FACTUAL PROFFER

The United States of America and Henry Loaiza-Montoya (the "Defendant") agree that had this case gone to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

1.     Cooperating witness testimony, lawfully intercepted communications, and other corroborating evidence would show that beginning at least as early as in and around 2016, and continuing through March 26, 2018, the Defendant did knowingly and willfully conspire to possess with intent to distribute five kilograms or more of cocaine of a mixture or substance containing a detectable amount of cocaine while onboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Section 70503(a)(1); all in violation of Title 46, United States Code, Section 70506(b).

2.     The Defendant was a leader/organizer and investor of a Colombia-based cocaine-trafficking organization specializing in the transport approximately 2,838 kilograms from Colombia to Central America and, ultimately, to the United States.   Colombian authorities obtained judicial authorization for the interception of conversations over telephone numbers used

by the Defendant and his co-conspirators.

3.      On January 7, 2018, a marine patrol aircraft detected a low-profile vessel (LPV) and two (2) fishing pangas side by side, located in the Eastern Pacific Ocean, approximately 130 nautical miles from the Port of San Jose, Guatemala. The Guatemalan Fuerza Especial Naval (FEN), who is a DEA Guatemalan Country Office vetted unit, dispatched an interceptor to target the vessels. While the FEN was enroute, the MPA observed approximately five (5) individuals loading between four (4) and six (6) bales of suspected cocaine onto one of the fishing pangas and flee the area. When the FEN arrived, they located the LPV which had been abandoned. The FEN discovered thirty (30) bales, totaling 900 individual brick shaped packages of suspected cocaine.

4.      Prior to this seizure, on December 22, 2017, law enforcement intercepted multiple communications where the Defendant instructs a con-conspirator to go to a location to begin analyzing reports, presumably naval interdiction reports, that other co-conspirators would provide. On December 23, 2017, LOAIZA-MONTOYA wire communication is intercepted whereby he informs coconspirator 1 that the "trucks are already in position, they are there, that it can be seen in the computer."

5.      On December 30, 2017, during an intercepted audio conversation between LOAIZA-MONTOYA and a coconspirator 1, the men discussed the coordination, dispatch, and tracking capabilities for the drug smuggling vessel. LOAIZA-MONTOYA asked if coconspirator 1 had already provided tracking devices to other co-conspirators. Coconspirator 1 replied that he acquired one, photographed it, and that it was already onboard the vessel. LOAIZA-MONTOYA asked, "Did you dispatch it yourself?" Coconspirator 1 replied, "No, he went and dispatched it himself, I arranged everything." LOAIZA-MONTOYA asked about additional tracking devices,

2

"the other black ones, the beepers." Coconspirator 1 advised he had sent them to the dispatch location. In coded language LOAIZA-MONTOYA told Coconspirator 1 to place tracking devices inside "the food" meaning the cocaine and inside "the ball" meaning a marine buoy. On January 13, 2018, the Defendant was intercepted discussing the failed load.

6.      On February 14, 2018, while on patrol in the Eastern Pacific Ocean, Mexican authorities interdicted a GFV, crewed by seven individuals who were transporting 41 bales containing approximately 1,027 kilograms of suspected cocaine. At the time of the seizure, the GFV was located approximately 110 nautical miles southwest of Lazaro Cardenas, Michoacan, Mexico.

7.      Prior to this seizure, on February 14, 2018, during a series of intercepted audio conversations between LOAIZA-MONTOYA and Coconspirator 1, the men discussed GPS tracking devices and tracking the GFV. From February 13-14, 2018, the Defendant was intercepted discussing the progress of the GFV, a refueling rendezvous location, and the location of law enforcement in relation to the GFV.

8.      On February 20, 2018, LOAIZA-MONTOYA and an unidentified individual again discussed the status of the "family" (members of the GFV crew). LOAIZA-MONTOYA advised that the GFV had failed to report. On February 26, 2018, law enforcement intercepted a wire communication whereby LOAIZA-MONTOYA informed another individual that "everything's lost."

9.      On March 24, 2018, while on routine patrol in the Eastern Pacific Ocean, a marine patrol aircraft detected a GFV and possible pick-up vessel on an apparent rendezvous course, approximately 410 nautical miles northwest of Darwin Island. The USCG cutter Bear launched an

over the horizon (OTH) small boat and helicopter.   The helicopter observed packages on the deck of the GFV.   The Bear was detected by the suspected pick-up vessel, a fishing vessel towing six pangas.   All six pangas dispersed from the larger vessel and acted as if they were fishing when the helicopter flew overhead.   As the helicopter approached the target GFV, the crew began to jettison bails of cocaine into the ocean.   The OTH gained control of the GFV and the vessel was determined to be a stateless vessel subject to the jurisdiction of the United States. An authorized search of the vessel, revealed 46 bales of suspected cocaine, estimated to contain approximately 911 kilograms. Law enforcement analyzed the white powdery substance inside the rectangular packages, which tested positive for cocaine.

10.   During lawfully intercepted communications between March 17, and March 28, 2018, the Defendant and coconspirator 2 discussed tracking the maritime cocaine shipment and coordinating the refueling of the vessel.   Communications revealed that a plane was spotted overhead and that the cocaine was jettisoned into the ocean.

11.   On March 24, 2018, during an intercepted communication between coconspirator 1 and 2, and the Defendant, coconspirator asked the Defendant for retrieving a jettisoned drug load.   The Defendant offered to assist and told coconspirator 2 that he would contact his workers "from the trucks" (refuelers) and arrange for the drug load to be recovered. Coconspirator 2 informed the Defendant that the load consisted of 911 [kilograms].   Later that day, the Defendant, coconspirator 1 and 2 discussed issues with the maritime cocaine vessel and compensation for the attempt to recover the jettisoned drug load.   The Defendant contacted his workers and arranged for a recovery effort; the workers inquired about payment for their services. The Defendant told the coconspirator 2 that the workers wanted $70,000.00 for the retrieval.

12.     The 2,838 kilograms of cocaine seized in this investigation were destined for Mexico, which would then be ultimately transported into the United States. Law enforcement intelligence revealed that in March 2018, in Mexico, a kilogram of cocaine had a street value of approximately $15,000. Thus, a shipment of 2,838 kilograms of cocaine would have an approximate street value of $42,570,000.

13.     The Parties agree that these facts, which do not include all of the facts knowing to the Government and to the Defendant, are sufficient to prove the charges outlined in Count 1 of the Indictment.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 6/25/2025          By: _____
                              SHARAD A. MOTIANI
                              ASSISTANT UNITED STATES ATTORNEY

Date: 6/25/25            By: _____
                              TODD YODER
                              COUNSEL FOR THE DEFENDANT

Date: 6-25-25            By: _____
                              HENRY LOAIZA-MONTOYA
                              DEFENDANT